UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS, INC. )<br>d/b/a LEHMAN CAPITAL, )<br>      Plaintiff, )<br>       )<br>  vs. )<br>       )<br>LAUREATE REALTY SERVICES, INC., )<br>LAUREATE CAPITAL, LLC, NETBANK, )<br>INC., NETBANK FSB, RESOURCE )<br>BANCSHARES MORTGAGE GROUP, )<br>INC. and THOMAS PEACOCK, )<br>      Defendants. ) | 1:04-cv-1432-RLY-TAB |

**ENTRY ON DEFENDANTS' MOTION TO EXCLUDE TESTIMONY AND
EXPERT REPORT OF DAVID M. HARVEY**

Defendants, NetBank, Inc. ("NetBank"), Laureate Realty Services, Inc. ("Laureate"), and Thomas Peacock ("Peacock") (collectively "Defendants"), move to exclude the expert testimony and report of David M. Harvey ("Mr. Harvey"), designated by plaintiff, Lehman Brothers Holdings, Inc., d/b/a Lehman Capital ("Lehman"). Defendants contend that the expert report tendered by Mr. Harvey is nearly identical to an expert report prepared by Ronald F. Greenspan ("Mr. Greenspan") dated May 25, 2004 ("Greenspan report"), in connection with the predecessor to this case, *Wells Fargo Bank Minnesota, N.A., et al v. Lehman Brothers Holdings, Inc. d/b/a Lehman Capital*, Case Number 02-03995-J. The court, having read the supporting and opposing memorandums

1

of law submitted by the parties, the designated portions of the deposition of Mr. Harvey, and the applicable law, now **DENIES** the motion.

## I. Background

### A. General information

On May 1, 1997, Laureate and Lehman entered into a Mortgage Loan Purchase and Sale Agreement ("MLPSA"). Pursuant to that agreement, Lehman agreed to purchase mortgage loans from Laureate. Lehman would then pool and sell the loans purchased from Laureate in connection with commercial mortgage backed securities ("CMBS") transactions.

During the fall of 1997, Skinner & Broadbent, Co. ("S&B) contacted Peacock, Executive Vice President of Laureate, to refinance a loan secured by a shopping center it owned and operated known as Hickory Ridge Commons Shopping Center (the "Hickory Ridge Property"). Laureate, as loan originator, recommended that Lehman purchase the loan. After receiving information from Laureate, a loan memo that summarized the underwriting performed by Laureate, Lehman extended a loan in the amount of $18 million for the Hickory Ridge Property (the "Hickory Ridge Loan") and subsequently sold the loan to First Union Commercial Mortgage Services, Inc. ("First Union") in connection with a commercial mortgage backed securitization known as the FULBBA 1998 Series C-2 Trust (the "FULBBA Trust").

The property went into foreclosure in January 2004. Lehman was subsequently sued by Wells Fargo Bank, N.A., as Trustee of the FULBBA Trust, and ORIX Capital

Markets, L.L.C. ("ORIX") as Servicer of the loans contained in the FULBBA Trust, in Dallas Texas (the "Texas Litigation"). Lehman eventually settled the Texas Litigation and agreed to repurchase the loan on the Hickory Ridge Property for approximately $18 million. Lehman then brought the instant suit against Laureate, presenting the same breach of warranty and representation claims in this case that Wells Fargo asserted against Lehman in the Texas Litigation.

### B. Mr. Greenspan's report

Mr. Greenspan was retained by counsel for Wells Fargo in the Texas Litigation to render an expert opinion with respect to the Hickory Ridge Loan in support of Wells Fargo's claims against Lehman. Pages 4 through 26 of his report describe the CMBS market in general, how CMBS differs from conventional real estate lending, and how various factors impact value. His report then sets forth the various deficiencies with respect to the origination and underwriting of the Hickory Ridge Loan.

### C. Mr. Harvey's report

Mr. Harvey testified at his deposition that prior to formulating his expert report, he received a series of documents from Lehman's attorney, Mr. King. (Deposition of David Harvey ("Harvey Dep.") at 227-29). After reviewing the documents, Mr. Harvey orally advised Mr. King of his opinions. (*Id*. at 230; *see also* Affidavit of Patrick G. King ("King Aff.") at ¶ 5). Because Mr. Harvey had never been called as an expert witness, he asked Mr. King for an "outline of – you know, an idea of how to do it." (Harvey Dep. at 166). Mr. King forwarded to Mr. Harvey a draft of a FED.R.CIV.P. 26(a)(2) disclosure for

him to review. (King Aff. at ¶ 5). The draft contained significant portions from Mr. Greenspan's expert report in the Texas Litigation, as Mr. Harvey and Mr. Greenspan reached similar conclusions with respect to the origination and underwriting of the Hickory Ridge Loan. (Harvey Dep. at 168, 226; King Aff. at ¶ 6). Mr. Harvey was unaware of that fact. (King Aff. at ¶ 6; Harvey Dep. at 167-68 ("I have no idea who Ronald Greenspan is, and I have no idea who wrote – what that report is.")). Mr. Harvey thereafter made modifications to the draft that Mr. King provided to him which were then integrated into the draft. (Harvey Dep. at 231). The final version was submitted to Mr. Harvey for his review and signature. (King Aff. at ¶ 7).

At the close of Mr. Harvey's deposition, the following colloquy took place:

Q: Are the opinions expressed in our report your opinions?

A: Yes, they are.

(Harvey Dep. at 231-32).

### III. Discussion

#### A. Rule 26 Disclosure

Federal Rule of Civil Procedure 26(a)(2)(B) provides that expert disclosures be "accompanied by a written report prepared and signed by the witness." FED.R.CIV.P. 26(a)(2)(B). The Advisory Notes to Rule 26 state that the Rule "does not preclude counsel from providing assistance to experts in preparing the reports . . . Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner which reflects the testimony to be given by the witness and it must be

4

signed by the witness." FED.R.CIV.P. 26, 1993 Advisory Committee Notes.  Thus, the determinative question with respect to whether there has been compliance with respect to the "preparation" of a Rule 26(a)(2) report is not who actually penned an expert's report, but whose opinions and analysis the report contains.  *See Marek v. Moore*, 171 F.R.D. 298 (D.Kan. 1997) (Counsel's assistance in preparing expert report is permitted, "though the report should be written in a manner that reflects the testimony to be given by the expert witness and must be signed by the expert."); *Isom v. Howmedica, Inc.*, 2002 WL 1052030 (N.D. Ill. 2002) (Although "[s]ome of the language in the report may have been chosen by counsel in the first instance, [the expert] was sufficiently involved in the preparation and revision of the report that it may fairly be considered as setting forth his opinions, not those of counsel.").  As the court in *Indiana Ins. Co. v. Hussey Seating Co.*, 176 F.R.D. 291 (S.D. Ind. 1997), explained:

> Unlike the attorney, the expert witness more likely preoccupies himself with his profession or field of expertise.  He may have little appreciation or none whatsoever for Rule 26 and its exacting requirements for a legally 'complete' report of the expert opinions, including all the 'data or other information'; and designating all supporting exhibits . . . To help ensure complete disclosure of the required information, counsel ordinarily should supervise preparation of the expert's report . . . in a manner that reflects the testimony to be given by the expert witness. . .'

*Id*. at 293 (quoting *Marek*, 171 F.R.D. at 301).

The situation the court is confronted with here straddles the line between attorney assistance and unauthorized attorney preparation of the report.  Although Mr. King attempts to characterize the draft he gave to Mr. Harvey as merely utilizing "some"

portions of the expert report of Mr. Greenspan, this was not the case.  Essentially, Mr. King used Mr. Greenspan's report as a template and edited it to suit this case.  That said, Mr. Harvey was unaware of that fact, and modified the document to more accurately reflect his opinions.  Significantly, Mr. Harvey made clear that the opinions expressed in the document are his opinions based upon the documents provided to him by Mr. King. The court therefore finds that Mr. Harvey was sufficiently involved in the preparation and revision of the report that it may be fairly considered as setting forth his opinions, and not those of Mr. King.

### B.   Motion for Sanctions

Included in Defendants' motion is a request for sanctions under FED.R.CIV.P. 37(c)(1).  Defendants take issue with the fact that (1) Mr. Greenspan's report is not listed as an exhibit to Mr. Harvey's report and that (2) Mr. Greenspan's report was never produced in discovery, despite the fact that Defendants asked Lehman to produce all expert reports in any litigation involving Hickory Ridge.  In this motion, Defendants request that Lehman pay their attorney fees and expenses incurred in filing this motion and deposing Mr. Harvey.

"[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(1) was either justified or harmless." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).  Whether to grant a request for sanctions is a discretionary decision and will not be disturbed on appeal absent an abuse of discretion.  *Id*.  Factors to guide the court's inquiry include: (1) the prejudice or

surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Id*.

In this case, for reasons left unexplained, Defendants did in fact obtain a copy of the Greenspan report prior to Mr. Harvey's deposition. Thus, they were in a position to fully explore at his deposition whether or not he held the opinions set forth in his disclosures. That deposition demonstrated that Mr. Harvey had no knowledge of the Greenspan report, and that the opinion disclosed in the report reflected his expert opinions regarding Laureate's origination and underwriting deficiencies with respect to the Hickory Ridge Loan. Having taken Mr. Harvey's deposition and having utilized Mr. Greenspan's report to examine him, Defendants cannot claim prejudice or surprise. Further, there is insufficient evidence in the record to show that Lehman's failure to disclose the Greenspan report was willful or done in bad faith. However, the fact remains that Lehman was obviously in possession of the Greenspan report and failed to disclose the document through discovery. Thus, the court reminds counsel of the importance of complying with the Federal Rules of Civil Procedure. Another blunder of this sort will result in sanctions.

**IV.   Conclusion**

For the reasons explained above, the court finds Mr. Harvey's report sufficiently reflects his expert opinions regarding Laureate's origination and underwriting practices with respect to the Hickory Ridge Loan. The court further finds that sanctions are not

warranted in this matter.  Defendants' Motion to Exclude the Testimony and Expert Report of David M. Harvey (Docket # 219) is therefore **DENIED**.

**SO ORDERED** this   6th    day of August 2007.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Adam  Arceneaux
ICE MILLER LLP
adam.arceneaux@icemiller.com

H. Nicholas Berberian
NEAL GERBER & EISENBERG
nberberian@ngelaw.com

Steven G. Cracraft
BINGHAM MCHALE
scracraft@binghammchale.com

Joel Elias Harvey
HAYES COPENHAVER CRIDER
jharvey@hcclaw.com

R. Scott Hayes
HAYES COPPENHAVER CRIDER
shayes@hcclaw.com

Patrick G. King
NEAL GERBER & EISENBERG
pking@ngelaw.com

David M. Mattingly
ICE MILLER LLP
david.mattingly@icemiller.com

Gregory A. Neibarger
MCTURNAN & TURNER
gneibarger@mtlitigation.com

Wayne C Turner
MCTURNAN & TURNER
wturner@mtlitigation.com