UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEHMAN BROTHERS HOLDINGS, INC. ) | | |
| d/b/a LEHMAN CAPITAL, ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | 1:04-cv-1432-RLY-TAB | |
| ) | | |
| LAUREATE REALTY SERVICES, INC., ) | | |
| LAUREATE CAPITAL, CORP., ) | | |
| NETBANK, INC., NETBANK FSB, ) | | |
| RESOURCE BANCSHARES MORTGAGE ) | | |
| GROUP, INC. and THOMAS PEACOCK, ) | | |
| Defendants. ) | | |

**ENTRY ON PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF THOMAS A. TARTER**

Plaintiff Lehman Brothers Holdings, Inc. d/b/a Lehman Capital ("Lehman") moves to exclude the testimony of Thomas A. Tarter ("Mr. Tarter"), an expert in commercial lending designated by Defendants Laureate Realty Services, Inc. and Thomas Peacock (collectively "Laureate"). For the reasons stated below, the court **GRANTS** in part, and **DENIES** in part, Lehman's motion.

**I.    Background**

On May 1, 1997, Laureate and Lehman entered into a Mortgage Loan Purchase and Sale Agreement ("MLPSA"). The express terms of the MLPSA obligated Laureate to, among other things, originate and underwrite loans to be sold to Lehman consistent

with the reasonable underwriting standards of a "prudent commercial lender." (Plaintiff's Ex. A, MLPSA at ¶ 2(b)(ii), (vi) and (xlviii)).

In January 1998, Laureate sold a loan to Lehman secured by a shopping center known as the Hickory Ridge Commons Center (the "Hickory Ridge Loan") located in Memphis, Tennessee. After the loan defaulted, Lehman alleges that it learned, among other things, that certain "underwriting" representations and warranties that Laureate made to Lehman to "induce" Lehman to acquire the loan were false and that, in fact, Laureate had made contrary representations about the property at the very same time to one of Laureate's largest clients, Nationwide Life Insurance, the then owner of the Hickory Ridge Loan.

Lehman thereafter brought the instant suit against Laureate seeking to recover losses it incurred resulting from Defendants' alleged misrepresentations and breaches of warranty. Specifically, Lehman asserts that Laureate breached its representations and warranties to Lehman that were expressly set forth in the MLPSA by, among other things, failing to underwrite the Hickory Ridge Loan in a manner consistent with commercially reasonable underwriting standards of a prudent commercial lender, and by deliberately withholding from Lehman certain material adverse facts about the property to induce Lehman to purchase the Hickory Ridge Loan from Laureate.

## II.    Standards Governing Expert Testimony

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Civil Procedure and the principles announced in *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc*., 509 U.S. 579, 579 (1993).  Federal Rule of Evidence 702 ("Rule 702"), provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

Before admitting expert testimony, *Daubert* requires that the district court function as a gatekeeper to ensure that expert testimony is both relevant and reliable.  *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000).  "In other words, as a threshold matter 'a district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue.'"  *Id.* (quoting *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 590 (7th Cir. 2000)).

In analyzing the reliability of an expert's opinion, the court's role is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert used in arriving at his opinion.  *Id*. at 718.  The court's role is not to determine whether the expert is credible or whether his or her theory is correct.  *Id*. at 719.  "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact."  *Id.* at 718 (citing *Daubert*, 509 U.S. at 595 ("The focus, of course, must be

solely on principles and methodology, not on the conclusions that they generate.")).

### III.  Discussion

Lehman objects to a number of Mr. Tarter's expert opinions. The court will address each in turn below.

#### A.  The MLPSA did not apply to the Hickory Ridge Loan

In Mr. Tarter's expert report, he opines that "[t]he Hickory Ridge Loan was not subject to the MLPSA." (Plaintiff's Ex. E, Expert Report of Thomas A. Tarter ("Tarter Report") at 7). In support of this opinion, he states:

>   \*    I saw no evidence in any of the documents that I reviewed that specifically stated that the Hickory Ridge Loan was funded pursuant to the MLPSA;
>
>   \*    In the Purchase Commitment used by Lehman to indicate its decision to fund the loan, reference is made to an agreement other than the MLPSA;
>
>   \*    The MLPSA also contains a document entitled "Form of Assignment of Mortgage and Assignment of Leases and Rents" ["Annex B"] which indicates that the loan would be transferred pursuant to the MLPSA;
>
>   \*    Documents used to transfer the Hickory Ridge Loan are not in the form of Annex B and do not make reference to the loan being transferred pursuant to the MLPSA and indicate that the Hickory Ridge Loan is being transferred without representation, recourse or warranty.

(*Id*. at 9).

Lehman seeks to exclude this opinion because it impinges upon the role of the jury, *see Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) ("The question of

4

interpretation of the contract is for the jury and the question of legal effect is for the judge."); *International Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.*, 1992 WL 22223, at *3 (N.D. Ill. Jan. 31, 1992) ("An expert witness may not testify simply regarding his reading of a contract.")), and contradicts the testimony of the witnesses in this case – including Thomas Dennard, Laureate's CEO at the time of the signing of the MLPSA, and Mark Hill, the Senior Vice President of Laureate who actually signed the MLPSA with Mr. Dennard's authorization – that the MLPSA governed all loan transactions between the parties, including the Hickory Ridge Loan.  (Plaintiff's Ex. C, deposition of Thomas Dennard ("Dennard Dep.") at 238-39; Plaintiff's Ex. D, deposition of Mark Hill ("Hill Dep.") at 156-57).

     Laureate agrees with Lehman that Mr. Tarter may not testify that the MLPSA does not apply to the Hickory Ridge Loan.  Instead, Laureate responds that its theory of the case is that an issue of fact exists as to whether the MLPSA is applicable to the Hickory Ridge Loan, and that Mr. Tarter should be allowed to testify that it is "customary in the commercial lending industry that loan transaction documents make reference to the specific agreement that governs such transaction."  (Defendants' Response at 4).  The court finds expert testimony with respect to "custom and practice" is not warranted on this issue.  The issue is whether the MLPSA applies to the Hickory Ridge transaction. Laureate's use of Mr. Tarter's testimony to support this argument is improper.  Expert testimony regarding custom and practice in other transactions is relevant only to the extent there is some uncertainty about what the parties agreed to.  There is no such

uncertainty here, as Laureate's former officers and directors agree with Lehman that the MLPSA does apply to the Hickory Ridge Loan.

In short, Laureate's revised characterization of Mr. Tarter's expert opinion – that it is "customary in the commercial lending industry that loan transaction documents make reference to the specific agreement that governs such transaction" – is being proffered solely to support the conclusion that the MLPSA does not apply to the Hickory Ridge Loan transaction. That conclusion, however, directly contradicts the sworn testimony of the fact witnesses involved in the negotiation and execution of the MLPSA and the unambiguous language of the contract. As such, Mr. Tarter's custom and practice testimony in this instance is not admissible.

### B.     Laureate complied with the "custom and practice" in the industry

In Mr. Tarter's Report, he opines that:

\*      Laureate's origination and underwriting process of the Hickory Ridge Loan was performed in a commercially reasonable manner for a prudent commercial lender;

\*      Laureate's origination practices employed in connection with the Hickory Ridge Loan conformed in all material respects to the practices customarily used by prudent commercial mortgage lenders that originate commercial mortgage loans for commercial real estate ("CRE") and commercial mortgage backed securities ("CMBS") transactions; and

\*      The underwriting and closing procedures utilized by Laureate with respect to the Hickory Ridge Loan conformed in all material respects to the customary underwriting and origination standards of a reasonable and prudent mortgage lender.

(Tarter Report at 7-8). Lehman takes issue with Mr. Tarter's opinions because he "failed

6

to disclose the basis for those opinions." (Plaintiff's Reply at 9). The court does not agree. Mr. Tarter reviewed numerous depositions and exhibits, and he supports his conclusions with the deposition testimony he reviewed. (*See* Tarter Report at 10-30; 38-42). Mr. Tarter's opinions are derived from an analysis of the steps performed by Laureate in the underwriting process based upon his experience in the commercial lending industry. *See, e.g., Gipson v. Wells Fargo Bank, N.A.*, 460 F.Supp.2d 9, 10-11 (D.C. Cir. 2006) (holding that expert testimony as to lending industry practices and standards based upon personal experience was admissible).

Lehman also attacks Mr. Tarter's custom and practice opinions as based upon a flawed factual predicate. Specifically, Lehman contends that since Mr. Tarter opined that the MLPSA does not apply to the Hickory Ridge Loan, his opinions regarding the commercial reasonableness of Laureate's underwriting practices and procedures are inapposite. Lehman's criticism fails to account for the fact that the MLPSA requires that the underwriting Laureate performed be consistent with that of a prudent commercial lender, hence expressly incorporating commercial real estate lending standards.

Finally, Lehman criticizes Mr. Tarter's opinion that based upon his review of the relevant documents, Laureate did not perform all of the underwriting duties associated with the Hickory Ridge Loan. Lehman suggests that the MLPSA requires only Laureate to perform such duties, and that Mr. Tarter's opinion regarding Lehman's role in that process is flawed.

Mr. Tarter's opinion is based upon his analysis of the underwriting actually

7

performed by Laureate.  Mr. Tarter explained in his report that underwriting is a "process that correlates both the eligibility of an applicant and the property securing the loan, with a lender's own specifically determined loan requirements and guidelines."  (Tarter Report at 12).  Mr. Tarter explained in his deposition that underwriting encompasses not only the investigation of the borrower and property securing the loan, but also the final decision as to whether the loan satisfies the lender's credit criteria.  (Deposition of Thomas Tarter ("Tarter Dep.") at 206-212).  Lehman set its own criteria as to the funding of the Hickory Ridge Loan and made the ultimate decision as to whether it should be funded.  (Hill Dep. at 37-38, 48, 92-96, 102-03; Dennard Dep. at 53; Deposition of David Rosenberg at 52-54).  Thus, in Mr. Tarter's opinion, Lehman participated in the underwriting of the Hickory Ridge Loan.

The fact that Mr. Tarter is of the opinion that Lehman was involved in the underwriting of the Hickory Ridge Loan does not require the exclusion of his testimony.  Although the MLPSA does not contain a warranty indicating that *Lehman* would perform the underwriting tasks in connection with the Hickory Ridge Loan, it likewise does not set forth the specific underwriting duties that Laureate was required to perform.  In other words, Mr. Tarter's opinion does not directly conflict with the MLPSA.

The fact that Lehman does not agree with Mr. Tarter's conclusions does not warrant the exclusion of Mr. Tarter's testimony.  Mr. Tarter's opinions are reasoned and founded on sufficient data in the record.  Mr. Tarter's opinions that Laureate conformed its underwriting duties to industry standards are therefore admissible.

### C.  Important documents were not produced

Lehman seeks to strike Mr. Tarter's opinion that important documents were not produced by Lehman in this litigation.  Laureate responds that it will not seek to introduce that opinion at trial.  Thus, Lehman's objection is moot.

### D.  Lehman's underwriting was not fully consistent with lending industry standards

Mr. Tarter opined that Lehman did not conduct its underwriting duties to industry standards.  (Tarter Report at 22).  Lehman objects to this opinion as the MLPSA did not require it to perform any underwriting duties.  Laureate did not respond to this argument, and in fact, noted in its Response that it seeks to introduce Mr. Tarter's proposed testimony only as to: (1) whether it is customary in the commercial lending industry that loan transaction documents make reference to the specific agreement that governs such transaction; and (2) whether Laureate's underwriting and origination performed in connection with the Hickory Ridge Loan was consistent with that of a prudent commercial lender.  Accordingly, the court finds Mr. Tarter may not give testimony on that subject.

## IV. Conclusion

For the reasons explained above, Plaintiff's Motion to Exclude Testimony of Thomas A. Tarter (Document # 228) is **GRANTED** in part, and **DENIED** in part. The court finds that Mr. Tarter may opine as to the commercial reasonableness of Laureate's underwriting and loan origination processes, practices, and procedures with respect to the Hickory Ridge Loan. Mr. Tarter may not, however, opine that the MLPSA did not apply to the Hickory Ridge Loan, that it is customary in the commercial lending industry that loan transaction documents make reference to the specific agreement that governs such transaction, or that Lehman did not perform its underwriting duties to industry standards.

**SO ORDERED** this  26th   day of November 2007.

                RICHARD L. YOUNG, JUDGE
                United States District Court
                Southern District of Indiana

Electronic Copies to:

Adam Arceneaux
ICE MILLER LLP
adam.arceneaux@icemiller.com

H. Nicholas Berberian
NEAL GERBER & EISENBERG
nberberian@ngelaw.com

Steven G. Cracraft
BINGHAM MCHALE
scracraft@binghammchale.com

Joel Elias Harvey
HAYES COPENHAVER CRIDER
jharvey@hcclaw.com

R. Scott Hayes
HAYES COPPENHAVER CRIDER
shayes@hcclaw.com

Patrick G. King
NEAL GERBER & EISENBERG
pking@ngelaw.com

David M. Mattingly
ICE MILLER LLP
david.mattingly@icemiller.com

Gregory A. Neibarger
MCTURNAN & TURNER
gneibarger@mtlitigation.com

Wayne C. Turner
MCTURNAN & TURNER
wturner@mtlitigation.com